# EXHIBIT A

11/14/2022 7:16 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 70166408
By: Patricia Jones
Filed: 11/14/2022 7:16 PM

CAUSE NO. _____

| | | |
|---|---|---|
| ARLENE SPENCER, individually and on behalf of all other similarly situated, | § § § | IN THE DISTRICT COURT OF |
| Plaintiff, | § § | |
| VS. | § § | HARRIS COUNTY, TEXAS |
| KELSEY-SEYBOLD MEDICAL GROUP PLLC d/b/a KELSEY-SEYBOLD CLINIC and LABORATORY CORPORATION OF AMERICA HOLDINGS | § § § § § § | ——— JUDICIAL DISTRICT |
| Defendants. | § | |

## PLAINTIFF'S ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES PLAINTIFF ARLENE SPENCER and files this Original Petition against Defendants KELSEY-SEYBOLD MEDICAL GROUP PLLC d/b/a KELSEY-SEYBOLD CLINIC ("Kelsey-Seybold") and LABORATORY CORPORATION OF AMERICA HOLDINGS ("LabCorp") (collectively the "Defendants"), individually and on behalf of all other similarly situated, and alleges and shows upon information and belief, by her attorneys, except as to allegations specifically pertaining to Ms. Spencer, which are alleged on her personal knowledge, as follows:

## DISCOVERY LEVEL

Plaintiff intends to conduct discovery under Level 3, pursuant to Texas Rules of Civil Procedure 190.4.

## INTRODUCTION

1.     Plaintiff is the victim of a "pass-through" billing scheme perpetrated by the Defendants Kelsey-Seybold and LabCorp on the Plaintiff and thousands of other insured patients in Texas.  Under the scheme, Kelsey-Seybold refers patients to on-site laboratories run by LabCorp for laboratory tests and then bills patients' insurance companies and/or the patients as if Kelsey-Seybold performed the tests.  Kelsey-Seybold, conceivably, in turn reimburses LabCorp for the service at a substantially lower price than what it receives from patients, but higher than what LabCorp would have received from payers had LabCorp billed the patients (or their insurers) directly.  This manner of circular billing results in substantially higher costs to patients than if LabCorp had billed directly, allowing Kelsey-Seybold and LabCorp to unfairly profit at the expense of patients.

### I.  Pass-Through Billing Scheme

2.     Pass-through billing is a widely known billing scheme where a "provider, such as a physician or hospital, pays a laboratory to perform their tests and then files the claims as though they had performed the tests themselves."[1]  Pass-through billing is a notorious practice because hospitals are often allowed to receive a higher rate of reimbursement from payers than laboratories are, so the payer ends up paying much more if a hospital bills for a service provided by a laboratory than if the laboratory billed directly.  The scheme is designed to take advantage of favorable hospital reimbursement rates, *at the expense of patients.*  Kelsey-Seybold acts as a "pass-through" that bills for laboratory services performed by LabCorp, so that payers would pay them at higher

---

[1] *See* HFPP White Paper "*Examining Clinical Laboratory Services,*" May 2018, published by Healthcare Fraud Prevention Partnership (a public-private partnership between the Federal Government, state and local government agencies, law enforcement, private health insurance plans, employer organizations, and healthcare anti-fraud associations) available at https://www.cms.gov/files/document/download-clinical-laboratory-services-white-paper.pdf (last viewed November 9, 2022).

rates, than if LabCorp billed them directly. Kelsey-Seybold would in turn pay LabCorp an agreed-upon rate that is much lower than the reimbursement Kelsey-Seybold would receive from payers. Kelsey-Seybold thus keeps the difference, pocketing a profit obtained by the pass-through billing scheme, while providing no laboratory testing or other services, other than to refer its patients to LabCorp and bill them or their insurance companies. LabCorp also makes a profit because it is reimbursed by Kelsey-Seybold at a rate higher than what it would have received from payers had it billed payers directly. Plaintiff Arlene Spencer was a victim of this scheme.

## II. Plaintiff's Experience

3.    On January 13, 2021, Plaintiff visited Kelsey-Seybold's West Grand Parkway Clinic ("WGP Clinic") for a routine annual physical exam. Prior to setting up this visit, Plaintiff checked Kelsey-Seybold's website and ensured that Kelsey-Seybold and any laboratory services were in-network to her insurance plan. At the visit, the doctor ordered certain laboratory tests for Ms. Spencer in connection with her routine annual physical and asked her to get them done "downstairs" (viz. at the LabCorp office located inside the Kelsey-Seybold WGP Clinic). Plaintiff did so. Plaintiff knew at that time that laboratory tests were fully covered under her insurance if performed by LabCorp. Weeks later, she received a bill for $220.31 for these laboratory tests. Plaintiff was shocked seeing this bill because her insurance plan covered 100% of laboratory tests if performed at a LabCorp facility, as was her experience in the past at another LabCorp facility.

4.    Upon contacting Cigna, her insurance company, and Kelsey-Seybold she realized that her laboratory tests were not covered at 100% because, although performed *by* LabCorp, they were *billed by* Kelsey-Seybold owing to an arrangement between Kelsey-Seybold and LabCorp. Had it been billed by LabCorp, she would have had to pay nothing. She thus discovered for the first time Kelsey-Seybold's egregious "pass-through" billing scheme. Plaintiff's Explanation of

Benefits also revealed that the laboratory services, billed using a "90" modifier code,[2] were billed by Kelsey-Seybold but were performed by an outside or reference laboratory.

5.    Kelsey-Seybold's pass-through billing scheme was implemented through an agreement between LabCorp and Kelsey-Seybold. From Plaintiff's experience, Defendants do not disclose this agreement to its patients at any point before billing the patient.  The only time a patient may find out that Kelsey-Seybold bills for LabCorp services, if at all, is from the Explanation of Benefits ("EOB") received from their insurance company, which is also often too technical to comprehend to someone who is not familiar with medical billing; or from a bill received from Kelsey-Seybold.  It is nearly impossible for a patient to figure out, without several hours of investigation, that Kelsey-Seybold's pass-through billing scheme makes laboratory tests more expensive than they should be.  Plaintiff was able to tell something was off only because of her prior experience with a stand-alone LabCorp facility where her blood work was covered at 100% under her LabCorp Benefit (defined below).  Had she not have had this experience, she would hardly have been able to figure out that Kelsey-Seybold's pass-through billing practices, that were negatively affecting patients, were deceptive.  Kelsey-Seybold and LabCorp fail to take any meaningful steps to alert Kelsey-Seybold patients that laboratory services availed at Kelsey-Seybold's LabCorp location may be more expensive to them than if billed directly by LabCorp or performed at a stand-alone LabCorp facility.  Texas law allows for recovery under principles of unjust enrichment where one has obtained a benefit from another by fraud or the taking of undue advantage.  Texas law similarly provides for relief where one has failed to disclose material facts that the other party to a transaction didn't know and didn't have an equal opportunity to discover,

_____

[2] A "90-modifier" code is a medical billing code commonly used by a physician or clinic to indicate that a particular laboratory test was performed by an outside or reference laboratory.  In other words, it means that although the physician is reporting the test, the actual test was carried out by an outside laboratory.

leading to injury that might have been avoided had the whole truth been disclosed. Texas law also provides for relief where one party to a transaction lacks bargaining ability or meaningful choice and enters into an unfairly one-sided contract.

6.     Plaintiff and the members of the Class have suffered injury due to Defendants' conduct and seek monetary damages, injunctive and/or other equitable relief, restitution and/or disgorgement of profits and attorneys' fees, costs, and expenses.

## JURISDICTION AND VENUE

7.     This Court has personal jurisdiction over Defendants because they conduct business in this jurisdiction and the actions giving rise to this Petition occurred in this jurisdiction.

8.     This Court has subject matter jurisdiction over this action pursuant to Tex. Govt. Code §24.007(a) and (b). The matter in controversy, exclusive of interest and costs, exceeds $500 and Plaintiff is bringing a class action consisting of hundreds, if not thousands of residents of Texas.

9.     Venue is proper pursuant to Tex. Civ. Prac. & Rem. Code §15.002(a) because Defendants maintain offices, have agents, employ individuals, and/or transact business in Harris Country; a substantial part of the events giving rise to Plaintiff's claims occurred in Harris County; and Defendants caused harm to Plaintiff and putative class members residing in Harris County.

## PARTIES

10.     Plaintiff Arlene Spencer is a citizen and resident of the State of Texas, residing in Katy, Harris County, Texas.

11.     Defendant Kelsey-Seybold Medical Group Pllc d/b/a Kelsey-Seybold Clinic is a Texas-incorporated entity with its administrative office at 11511 Shadow Creek Pkwy, Pearland, TX 77584, and at its main medical campus at 2727 W. Holcombe Avenue, 4th Floor

Administration, Houston, Texas, and may be served by service on its registered agent, CT Corporation, 1999 Bryan Street, Dallas, TX 75201.

12.    Kelsey-Seybold is a large, multi-specialty clinic system primarily located in the Greater Houston, Texas area.  Kelsey-Seybold's first clinic was set up in 1949, and has since then grown to form a network of thirty-four clinics, with the establishment of its newest clinic in August 2022.  Kelsey-Seybold's network includes multispecialty care centers, a cancer center, a women's health center, two ambulatory surgery centers and a specialized sleep center.  Of these, more than 20 locations have a LabCorp facility on-site providing laboratory services for Kelsey-Seybold patients ("KS LabCorp").

13.    LabCorp is a corporation incorporated in Delaware, with its principal place of business and headquarters located at 358 South Main Street, Burlington, North Carolina 27215.[3] LabCorp is licensed to transact business in Texas.  It is one of the largest provider clinical lab testing services in the world with laboratories in 48 states across the United States.  LabCorp is the parent company of numerous subsidiaries that provide lab testing, patient billing and related services.  LabCorp is a publicly traded company and is listed and traded on the New York Stock Exchange under the ticker symbol "LH."  LabCorp has more than 140 locations in the State of Texas alone.  LabCorp may be served through its registered agent Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company. at 211 E. 7th Street Suite 620 Austin, Texas 78701-3218.

14.    At all relevant times to this Action, Defendants were engaged in "trade" and "commerce" in the State of Texas as defined in § 17.45(6) of the Texas Deceptive Trade Practices

---

[3] *See* LabCorp's U.S. Securities and Exchange Commission 2021 10-K report filed on February 25, 2022.  Howeger, Texas Secretary of State Records reflect a mailing address and principal office of 231 Maple Ave., Burlington NC, 27215.

Act (the "DTPA") and the Tex. Bus. & Com. Code § 17.41 et. seq., and Plaintiff and the putative class members were acting as "consumers" as defined in § 17.45(4) of the DTPA.

## BACKGROUND

### I. Plaintiff's Bill From Kelsey-Seybold

15.     In 2021, Plaintiff wanted to schedule a routine annual physical exam. She checked and knew that Kelsey-Seybold was in-network to her APWU Cigna health insurance plan and therefore contacted Kelsey-Seybold's West Grand Parkway Clinic to schedule an appointment. Plaintiff was set up for a visit with Dr. Molly M. Alakayi-Nakyonyi at Kelsey-Seybold, 2510 W. Grand Parkway N., Katy, Harris County, TX, 77449. Plaintiff visited Dr. Alakaya-Nakyonyi on January 13, 2021. At that visit, Plaintiff was ordered laboratory tests in connection with her visit and was told to get them performed "downstairs" (viz. at the KS LabCorp located inside the Kelsey-Seybold Clinic). The doctor ordered these tests electronically through Kelsey-Seybold's electronic database from where KS LabCorp could retrieve the test order. Plaintiff was then given a sheet of paper containing her details including name and date of birth, and some test codes, for her to hand to the KS LabCorp personnel for the tests to be taken.

16.     Plaintiff has a fee-for-service health insurance plan (high option), the APWU Health Plan, through Cigna network (American Postal Workers Union). Her "High Option" plan "include(s) 100% coverage for an array of in-network preventive tests and screenings, routine physical exams" and explicitly includes coverage for blood tests, urinalysis, and other laboratory tests. Her plan also provides that "[i]f LabCorp … performs your covered lab services, you will have no out-of-pocket expense and you will not have to file a claim." Her policy makes it clear that she will pay "Nothing (No deductible)" for such laboratory services (hereinafter referred to as

"LabCorp Benefit").  Further, her costs for routine preventive care at any in-network facility and laboratory services related to covered, in-network preventive care would also be covered at 100%.

17.    Plaintiff, from past experience, knew about her plan's LabCorp Benefit.  She knew that her policy provided that laboratory tests performed by LabCorp would be covered at 100%. There was no doubt that the laboratory at Kelsey-Seybold was a "LabCorp" lab.  There was a huge signage outside the laboratory office, visible to anyone walking into the Kelsey-Seybold location, that said LabCorp.  Plaintiff had also checked with Kelsey-Seybold which laboratory they used for bloodwork, before even making the appointment.  Kelsey-Seybold had confirmed they used LabCorp for their bloodwork.  She therefore had every reason to believe that the laboratory tests at the Kelsey-Seybold location were performed by a LabCorp and would therefore be fully covered under her insurance's LabCorp Benefit.  With this understanding, Plaintiff went into the KS LabCorp and underwent the prescribed laboratory services.

18.    However, weeks later Plaintiff received a bill dated March 7, 2021, from Kelsey-Seybold stating that she owed it $220.31 for laboratory services that were "purchased from LabCorp of America, 7207 N. Gessner, Houston, TX 77040" on January 13, 2021 ("Bill"). Notably, all the laboratory services were billed using a "90" modifier code.  Plaintiff also received an EOB dated February 19, 2021 reflecting the application of the 90-modifier code.[4]

**II. Plaintiff's Efforts To Contact Kelsey-Seybold To Correct The Bill**

19.    Plaintiff contacted Kelsey-Seybold three times to find out why she got billed for the laboratory tests despite the LabCorp Benefit under her insurance.  She also contacted Cigna to inquire about the Bill and they informed her that that she should not have been billed at all for the

---

[4] The EOB, a statement received from the Plaintiff's insurance company Cigna, indicated that Kelsey-Seybold had billed it a total of $437 for laboratory services performed at the KS LabCorp on January 13, 2021.  It also indicated the amount insurance paid and the balance amount for which the patient was responsible.

laboratory services performed by LabCorp.  Plaintiff's husband (who is the primary subscriber to her insurance plan) also received a "courtesy" letter dated May 25, 2021 from APWU Cigna that "APWU Health plan noted that you or perhaps a family member(s) had a visit(s) to a **Non-Preferred Lab** in the last few months."[5]  (Emphasis added.)  The letter also reminded him (and Plaintiff) that laboratory services should be performed at "one of the national preferred labs – [such as] Laboratory Corporation of America (LabCorp) or Quest Diagnostics to get your tests and save …. They offer the same quality service at significant savings.  Cigna's Network, as part of APWU's High Option Health plan, includes all LabCorp and Quest labs.  ***Most importantly, as a High Option plan member, your in-network LabCorp … cost is $0….***" (Emphasis in original.)

20.     Finally on a three-way call between the Plaintiff, Cigna and Kelsey-Seybold, Plaintiff was informed by Kelsey-Seybold that it had an agreement with LabCorp whereby Kelsey-Seybold would bill third-party payers/patients for services performed at a KS LabCorp.  This billing practice, amounting to "pass-through billing," is in apparent disregard to Plaintiff's and other patients' insurance policies, enabling Kelsey-Seybold to bill patients for monies they would not have otherwise had to pay.  According to Cigna, but for this scheme, Plaintiff would have paid at least $73 less, if likely nothing at all.

21.     Plaintiff was completely unaware of this egregious pass-through billing scheme prior to becoming a victim of it.  She was neither aware of the LabCorp Agreement nor was informed by the hospital, her treating physician, through any intake paperwork at Kelsey-Seybold or by LabCorp that the laboratory services performed at a KS LabCorp would be billed by Kelsey-Seybold, and not LabCorp, thereby preventing the tests from being fully covered under her

---

[5] Given that Mr. and Mrs. Spencer had visited no other lab, other than the KS LabCorp since the beginning of 2021, the "Non-Preferred Lab" being referred to in the letter was KS LabCorp.

insurance plan's LabCorp Benefit.  Kelsey-Seybold never asked Plaintiff whether she had any laboratory benefits under her insurance plan, obviously never checked with her insurance company to see if she had any laboratory benefits under her plan, obviously never checked her insurance plan to see if she had any laboratory benefits before billing her, nor did they know that had LabCorp billed her directly, her plan would have covered 100% under the LabCorp Benefit.  Even when she walked into the KS LabCorp, she was not informed by Kelsey-Seybold or LabCorp personnel that Kelsey-Seybold would bill her for LabCorp's services.   On the contrary, as mentioned above in ¶ 17, there was every reason for her to believe that she was getting services done at a LabCorp facility and that the services would be eligible for the LabCorp Benefit.

### III.  Plaintiff's Pre-Suit TRCP 202 Discovery Action, in Case No. 2021-64424

22.     On April 23, 2021, Plaintiff sent a written notice pursuant to the Texas Deceptive Trade Practices Act-Consumer Protection Act, §17.505 alleging violations thereunder ("Notice") to both Defendants.  The Notice was sent by certified mail, return receipt requested.  On June 21, 2021, LabCorp responded stating that "LabCorp bills for these tests as directed by the ordering physician and if, directed to do so, LabCorp bills the practitioner for the tests services provided." And on June 25, 2021, Kelsey-Seybold responded admitting the existence of a Contract between LabCorp and Kelsey-Seybold and stated that "there is nothing unusual or improper about the agreement between Kelsey-Seybold and LabCorp." [6]

23.     Aggrieved by Kelsey-Seybold's billing practice, Plaintiff filed a petition on October 4, 2021, pursuant to Rule 202 of the Texas Rules of Civil Procedure, requesting the Court

---

[6] The DTPA demand letter, KS's response and LabCorp's response were previously filed as Exhibits 2E, 2F and 2G by Petitioner's in Case No. 2021-64424 in the 113th District Court of Harris County, Texas, on December 10, 2021, at Image Numbers 99386355 et seq; *See also Id.* at KS's *Response and Objections to Petitioner's Rule 202 Petition* at Exhibits A and B, at Image Numbers 98930944 and 98930945.

to allow her to take discovery of a specific set of issues that would enable her to further investigate potential deceptive trade practices claims against Kelsey-Seybold ("Rule 202 Petition"). The Rule 202 Petition was assigned to the 113th District Court of Harris County in Texas, bearing Cause No. 2021-64424.

24.     On November 12, 2021, Kelsey-Seybold, through its counsel, filed its objections to the Rule 202 Petition. On December 10, 2021, Plaintiff filed her reply to these objections.

25.     On December 14, 2021, Plaintiff's Rule 202 Petition was heard by Judge Lawrence "Larry" Weiman who ruled that "The Court, having considered the petition, response, reply, and any evidence and other matter properly presented to it, finds that the petition is meritorious and GRANTS the request to take the oral deposition with subpoena duces tecum and that the likely benefit of allowing the Petitioner to take the requested deposition to investigate the potential claims outweighs the burden or expense of the procedure." The Court further ordered:[7]

> "2. The oral deposition of a corporate representative of respondent, Kelsey-Seybold Medical Group Pllc, …, to provide testimony on the topics outlined in Paragraph V of the Petition and any other topics reasonable related to such topics,
>
> 3. The representative of Kelsey-Seybold bring to the deposition, the documents described in Paragraph V of the Petition, but limited to any contracts or other written agreements or correspondence between Kelsey-Seybold and Lab Corp that references billing or payments or pass-through arrangements that would apply to Arlene Spencer's billing for or including lab tests."

26.     Pursuant to this Order, Plaintiff took the deposition of Kelsey-Seybold's corporate representative, Ms. Marnie Matheny, Senior Vice President - Payor Strategy and Health Operations on June 22, 2022 after months of effort to get it scheduled and then rescheduling it twice at the request of Defendant Kelsey-Seybold. Prior to the deposition, Kelsey-Seybold

---

[7] Available at Harris County District Clerk Image No. 99426357.

produced certain documents related to Ms. Spencer and the Laboratory Services Agreement. The deposition transcript and certain documents designated as "Highly Confidential" are governed by an "Agreed Protective Order" entered on June 10, 2022. [8]

### IV. Laboratory Services Agreement between LabCorp and Kelsey-Seybold

27.    The Agreement between LabCorp and Kelsey-Seybold enabled Defendants to set up a pass-through billing scheme whereby LabCorp billed Kelsey-Seybold for tests performed at a KS LabCorp and in turn Kelsey-Seybold billed patients for these tests as though Kelsey-Seybold had performed the tests itself. It can be reasonably inferred that Kelsey-Seybold then paid LabCorp a fee for these services that is higher than what LabCorp would have received had it billed payers directly. [9] If not, LabCorp, being a for-profit organization, would not have signed up to be a part of this pass-through billing scheme, especially given that pass-through billing as a practice is widely known to be prohibited in the healthcare industry.

### V. Defendants Profit From Their Pass-Through Billing Scheme At The Expense of Patients

28.    Kelsey-Seybold directly profits, at the expense of its patients, from its pass-through billing scheme. When Kelsey-Seybold files claims for LabCorp's services, it bills payers its chargemaster rates and is reimbursed based on the rates it negotiates with third-party payers. These rates may be much higher than the negotiated reimbursement rates between LabCorp and third-party payers for the same services. Therefore, Kelsey-Seybold takes advantage of the favorable

---

[8] The Court Reporter's certificate was filed on August 18, 2021, and is available at Harris County District Clerk Image No. 103567483.

[9] See HFPP White Paper at fn 1 (pass-through billing scheme is where a "provider, such as a physician or hospital, pays a laboratory to perform their tests and then files the claims as though they had performed the tests themselves.").

reimbursement rates (viz. the allowed amounts) that third-party payers are willing to pay Kelsey-Seybold as compared to LabCorp for the same service.

29.    This is illustrated by comparing Plaintiff's experience getting a Lipid Panel (CPT 80061) at a stand-alone LabCorp facility in Houston in January 2020 and at KS LabCorp in January 2021.

**TABLE A:** *Direct LabCorp billing v. Pass-through billing reimbursement rates*

| | Standalone LabCorp facility, Houston (Direct LabCorp billing) | | | KS LabCorp (Pass-through billing by Kelsey-Seybold) | | |
|---|---|---|---|---|---|---|
| | Billed Amount | Allowed Amount | Patient Resp. | Billed Amount | Allowed Amount | Patient Resp. |
| Lipid Panel CPT: 80061 | $98 | $8.88 | $0 | $76 | $38.03 | $38.03 |

30.    The table above indicates that Cigna's negotiated reimbursement rate (viz. the Allowed Amount) with LabCorp for CPT 80061 was $8.88 and its negotiated reimbursement rate with Kelsey-Seybold for the same service was $38.03.  Thus, the negotiated reimbursement rate when a service was performed by LabCorp, but billed by Kelsey-Seybold was almost *four times* the rate when performed and billed by LabCorp.  This significant difference in the reimbursement rates is a burden that often falls on patients when they have copays or unmet deductibles.  This is where patients are affected by Kelsey-Seybold's pass-through billing practice while Kelsey-Seybold makes a profit.

31.     Further, it is easy to see how LabCorp profits from its Agreement with Kelsey-Seybold - because the reimbursement it receives from Kelsey-Seybold under the Agreement would potentially be higher than what it would have received by a third-party payer had it billed directly.

**VI. <u>Defendants Uniformly Fail to Disclose Their Billing Practices</u>**

32.     Defendants uniformly fail to timely disclose to patients, information known to them, *viz.* their billing arrangement, and have put in place a system that actively induces insured consumers to stay and receive laboratory services at the KS LabCorp, so that they could profit from the arrangement.  Had Defendants disclosed their arrangement that Kelsey-Seybold will be billing for services performed at a KS LabCorp, patients could have gone elsewhere to secure laboratory services in a manner that worked best under their respective insurance plans.

33.     At no point before billing a patient does Kelsey-Seybold disclose to patients the existence of its Agreement with LabCorp, nor does it inform patients that Kelsey-Seybold will be billing for the LabCorp tests performed at a KS LabCorp.  Kelsey-Seybold's intake procedure is cursory at best without any detailed verification of insurance benefits.  From Plaintiff's experience, Kelsey-Seybold physicians also do not write scripts or prescriptions for laboratory tests which a patient can take to a laboratory which will perform those tests.  Instead, they simply direct patients to a KS LabCorp after putting in lab orders in their electronic medical records ("EMR").  Plaintiff was neither provided a written script for laboratory tests nor given the option to get tests done at another laboratory.

**VII.     <u>Defendants Conceal Material Information and Mislead Patients</u>**

34.     Kelsey-Seybold's website conceals material information regarding its pass-through billing practice.  It also misleads patients by making them believe that Kelsey-Seybold is

transparent in its billing practices and is sensitive to the cost of medical care to patients, both of which it is not.

35.     Kelsey-Seybold's website states that it is the "longest-standing ACO [Accountable Care Organization] in Houston" striving to "deliver quality care at a lower total medical cost…" Kelsey-Seybold's website also has an entire section for "Billing FAQs" under which it does not disclose the pass-through billing scheme, a significant billing practice that is material to patients in deciding where to get their laboratory services done. The absence of this information on a page entirely dedicated to "billing" is evidence of active concealment.[10]

36.     Indeed, a comprehensive search of Kelsey-Seybold's website for any references to pass-through billing or the fact that it is Kelsey-Seybold that bills for laboratory tests yielded no relevant results and a search for references to "LabCorp" yielded only four results, three of which were irrelevant to the issues of laboratory billing. The fourth one was an FAQ section for Aetna insured patients. However, even here Kesley-Seybold actively conceals both the Agreement with LabCorp and its practice of pass-through billing.

37.     Further, Kelsey-Seybold provides patients with incomplete information that is entirely misleading. For example, on its "Corporate Services">Executive Health > Your Visit webpage, Kelsey-Seybold states that for Testing and Preventive Checkup "Kelsey-Seybold Clinic is contracted with most health plans and will bill the carrier for the physician visit, laboratory work, and tests ordered by the physician to potentially include EKG, cardiac stress test, vision screening, and audio screening." Patients are not informed that the laboratory work being referred to here, which would most likely be carried out by a KS LabCorp, would end up costing patients a lot more

---

[10] *See* https://www.kelsey-seybold.com/make-an-appointment/billing-faq (last accessed on November 14, 2022).

than what it would have cost had they gotten it done at a different lab owing to Kelsey-Seybold's pass-through billing scheme.

38.      Similarly, LabCorp's website has no mention of its pass-through billing arrangement with Kelsey-Seybold, nor does LabCorp provide Kelsey-Seybold patients who walk into a KS LabCorp with any disclosures stating that the services at that LabCorp facility could potentially be more expensive to the patients owing to its pass-through billing arrangement with Kelsey-Seybold.

39.      In fact, on LabCorp's website, LabCorp misleads patients by representing that if a patient has health insurance and gets tests done at a LabCorp, LabCorp "will file claims directly to Medicare, Medicaid, and many insurance companies and managed care plans."  It does not tell patients that there could be exceptions to this rule, such as this instance of pass-through billing.[11]

40.      In light of the above, Plaintiff believes that Defendants' conduct violate the Texas Deceptive Trade Practices Act-Consumer Protection Act, §17.41 et seq., as well as common law.

---

[11] *See* https://www.labcorp.com/frequently-asked-questions/patient/billing-insurance/all ("I have health insurance. Will Labcorp file the claim? How does billing work with insurance?

Labcorp will file claims directly to Medicare, Medicaid, and many insurance companies and managed care plans. Before you have lab tests performed, please make sure:

- Your insurance information is up to date.
- Labcorp is a contracted laboratory for your insurance company. Contact your insurance company for information.

Once your insurer has processed your claim, you will receive an Explanation of Benefits (EOB) from your insurer informing you of the amount it will pay for your laboratory services.

- The EOB is not a bill, but it may indicate that a balance remains which is your responsibility. That balance may include your copayment, deductible, or other costs outlined in your terms of coverage. If you have a question about your EOB or your terms of coverage, contact your insurance company.
- Your insurer will inform Labcorp about any balance you owe, and we will send you a bill for that amount." (last accessed on September 8, 2022).

*See also* https://www.labcorp.com/patients/labs-and-appointments/insurance-lists (last accessed on September 8, 2022).

## CLASS ACTION ALLEGATIONS

41.    Plaintiff brings this action on behalf of herself and all persons who had a laboratory test or any other service performed at a KS LabCorp, and were then billed by Kelsey-Seybold for these services ("Class").  Excluded from the Class are Defendants and their parents, subsidiaries, representatives, officers, directors, employees, partners, and co-ventures.

42.    As alleged in this Petition, Defendants have acted and refused to act on grounds generally applicable to all the members of the Class, engaging in system-wide policies and practices at Kelsey-Seybold Clinics that make relief with respect to the Class as a whole appropriate.  These policies and practices include the establishment of a pass-through billing scheme where Kelsey-Seybold bills patients for laboratory services performed by LabCorp, resulting in higher reimbursements for Defendants - and higher costs to the patients.  Further, Defendants' disclosures, and lack thereof, relating to the costs of care and billing practices in the intake paperwork, are uniformly presented to all Kelsey-Seybold patients at the time of check-in. It is also a matter of course that Defendants do not disclose its pass-through billing scheme *viz.* the fact that it will be billing patients/third-party payers for laboratory tests performed at a KS LabCorp, which will often result in substantially higher cost to patients.

43.    This action has been brought and may properly be maintained as a class action, satisfying the numerosity, commonality, predominance typicality, adequacy and superiority requirements.

44.    Plaintiff seeks to represent a Class with a well-defined community of interest in the questions of law and fact involved in this litigation.  The proposed Class is easily ascertainable from Kelsey-Seybold's billing records.

17

45. The members of the Class are so numerous that joinder of all Class members is impracticable. While the exact number of Class members is not known at this time (but, again, is easily ascertainable from Defendants' regular business records), Plaintiff believes that there are thousands – or at the very least hundreds – of Class members. From Kelsey-Seybold's website, there appears to be more than 20 KS LabCorp locations performing hundreds, if not thousands, of laboratory tests at each location. It is also reasonably expected that a substantial number, if not all, of laboratory tests ordered by Kelsey-Seybold physicians are performed at these KS LabCorp locations.

46. <u>Commonality:</u> Common questions of law and fact exist as to all members of the Class and predominate over any individual questions that might exist. Among the questions of law and fact that predominate and are common to the Class are:

  a. Whether Defendants' conduct violated the Texas Deceptive Practices Act ("DTPA"), Texas Business and Commerce Code § 17.41 et seq.;

  b. Whether Defendants breached their implied contractual obligations;

  c. Whether Defendants set up a pass-through billing scheme through an agreement whereby Kelsey-Seybold would bill insurance payers/patients for laboratory services that were performed by LabCorp and then in turn pay LabCorp an agreed upon fee for that service;

  d. Whether this pass-through billing scheme was applied uniformly to all Kelsey-Seybold patients who got tests done at a KS LabCorp;

  e. Whether Defendants' disclosures, and lack thereof, regarding laboratory billing and their pass-through billing practice were uniform across all locations with a KS LabCorp and all patients who got tests done at a KS LabCorp;

  f. Whether Defendants have been unjustly enriched by its inequitable and unlawful conduct;

  g. The proper measure of damages; including monetary and injunctive relief, and other equitable relief.

47.    <u>Typicality:</u> Plaintiff's claims are typical of the claims of the Class.  Plaintiff is a member of the Class as defined.  She was billed unnecessarily higher amounts because of Defendants' pass-through billing arrangement.  Plaintiff seeks to obtain relief for herself and the Class.

48.    <u>Adequacy:</u> Plaintiff is a member of the Class and will fairly and adequately protect the interest of the other members of the Class.  Plaintiff's interests align, and do not conflict, with those of the other Class members.  Plaintiff has retained counsel competent and experienced in complex consumer class action litigation, including health care consumer class actions in particular, and who will devote sufficient time and resources to litigate this matter.

49.    <u>Superiority of Class Action:</u> A class action is superior to all other methods for the fair and efficient adjudication of this controversy.  Since the damages suffered by the members of the Class may be relatively small in comparison to the expense and burden of individual litigation, it is virtually impossible for Plaintiff and members of the Class to individually seek redress.  Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

50.    As alleged herein, Defendants have acted and refused to act on grounds generally applicable to the Class, thereby also making appropriate final injunctive relief with respect to the Class as a whole.

## CAUSES OF ACTION

## COUNT I – UNCONSCIONABILITY AGAINST DEFENDANT KELSEY-SEYBOLD

51.    Plaintiff realleges each of the allegations set forth in the foregoing paragraphs.

52.     Any express contract between Ms. Spencer and Kelsey-Seybold – which would derive from a form contract presented to each patient, which is unilateral in nature – does not cover the subject matter of the claim.

53.     In the alternative, to the extent that an express contract term does cover the subject matter of Plaintiff's claims, it should be found unconscionable and the Court should limit its application to avoid an unconscionable result.

54.     Kelsey-Seybold provides patients with intake paperwork including purported financial disclosures and authorizations when they walk into the clinic to check-in for their appointment.  However, upon information and belief, these forms are hardly shown to patients for review and if at all shown, it is for a brief few moments, which is hardly enough time for any reasonable review.  In the case of Ms. Spencer, she was not shown any financial authorization forms to review but was simply asked to sign on an electronic keypad barely the size of a cell phone and which did not provide a readable copy of the financial authorization forms.

55.     An examination of the contract formation process reveals a lack of any meaningful choice and the non-bargaining ability of the patient.

## COUNT II – FRAUD BY NONDISCLOSURE AGAINST ALL DEFENDANTS

56.     Plaintiff realleges each of the allegations set forth in the foregoing paragraphs.

57.     Plaintiff will show that Defendants uniformly failed to disclose the whole truth about the high cost of laboratory tests due to pass-through billing.  Plaintiff will also show that Defendants had a duty to disclose this because the KS LabCorp that patients were sent to had bold LabCorp signs inducing patients to believe that tests performed there will be covered by their insurance as if they went to any other LabCorp facility.  Neither LabCorp nor Kelsey-Seybold made any disclosure to correct that impression.  They failed to inform patients that the tests will

be billed by Kelsey-Seybold, and not LabCorp, on account of pass-through billing and due to this practice, the tests might end up costing patients more than what it would have cost had they gone to a non-KS LabCorp.  Plaintiff and other Class members had no opportunity whatsoever to discover the pass-through billing practice.  Defendants uniformly concealed material information both on their website and in any disclosures and intake paperwork, if any (as discussed in ¶¶ 34-39).  The only time patients would ever realize, if at all, that they were "pass-through" billed, is when they get a bill from Kelsey-Seybold.  At that point if Class members did not pay or had paid a lesser amount, Kelsey-Seybold would have taken action by turning them over to collections, that would have potentially destroyed their credit and/or refused to provide medical services to them again.  Thus, *after* receiving services, Plaintiff and other Class Members were left with no choice but to rely on Defendants' uniform misrepresentation.

58.     Moreover, the omitted information is the sort that a reasonable person would consider important in making a decision about how to proceed.  Had Defendants disclosed the whole truth, Plaintiff would have acted differently.  Plaintiff thus suffered injury as a proximate result of Defendants' wrongful conduct.

## COUNT III – DTPA VIOLATIONS AGAINST ALL DEFENDANTS

59.     Plaintiff realleges each of the allegations set forth in the foregoing paragraphs.

60.     Plaintiff additionally brings this action pursuant to the DTPA on the grounds that Defendants engaged in "false, misleading, deceptive" acts or practices in violation of the DTPA including under § 17.46(b)(24) ("failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction which the consumer would not have entered had the information been disclosed"), and "unconscionable actions or course of action" under §

21

17.45(5) ("an act or practice, which to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree") in violation of the foregoing and §§ 17.50(a)(1), (3).

61.     Defendants withheld information known to them, that they knew would have been important to consumers, in order to induce consumers into a transaction.  A reasonable consumer deciding where to seek laboratory/diagnostic services would clearly find the pass-through billing scheme that significantly increases the cost of common lab tests important, material information.

62.     Additionally, the business acts and practices of Defendants, take advantage of consumers to a grossly unfair degree, to consumers' detriment.  No consumer has the knowledge or opportunity to discover the pass-through billing scheme at the time of the transaction, a reality that increases payments to Defendants at the expense of patients.

63.     Defendants' wrongful conduct was a producing cause of damages to Plaintiff and the putative Class members.

64.     In the event that the false, misleading, or deceptive acts or practices were committed knowingly by Defendants, Plaintiff is entitled to recover treble damages.

65.     Plaintiff is entitled to recover reasonable and necessary attorneys' fees, expenses, and court costs under the DTPA.

## DAMAGES

66.     The Plaintiff, individually, seeks monetary relief and non-monetary relief as described herein of $100,000 or less at this time.  However, the damages for the Class include non-monetary relief and monetary relief over $1,000,0000 as described elsewhere herein.

**ATTORNEYS' FEES**

67.    Plaintiff and the Class are entitled to recover and sue for attorneys' fees and costs under Tex. R. Civ. P. 42 and Tex. Bus. & Com. Code § 17.50(d).

**CONDITIONS PRECEDENT**

68.    Except as otherwise stated herein, any and all conditions precedent for Plaintiff and the Class to recover have been performed or occurred.

**REQUEST FOR DISCLOSURE**

69.    Pursuant to the Texas Rules of Civil Procedure 194, Plaintiff requests that Defendants provide the information required in a Request for Disclosure.

**JURY DEMAND**

70.    Plaintiff and the Class demand a trial by jury on all triable issues.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, requests that the Court award the following relief:

a.    Certify this action as a class action, appoint Plaintiff as Class representative, and designate the undersigned as Class Counsel;

b.    Award Plaintiff and the Class monetary damages, including treble damages as appropriate;

c.    Award Plaintiff and the Class equitable, declaratory, and/or injunctive relief;

d.    Award Plaintiff and the Class restitution and/or disgorgement to the extent Defendants have been unjustly enriched;

23

     e.      Grant Plaintiff and the Class payment of the costs of prosecuting this action, including expert fees and expenses;

     f.      Grant Plaintiff and the Class payment of reasonable attorneys' fees;

     g.      Grant such other relief as the Court may deem just and proper.

Respectfully submitted,

**HILDER & ASSOCIATES**

/s/ *Philip H. Hilder*
Philip H. Hilder
TBN 09620050
Q. Tate Williams
TBN 24013760
819 Lovett Blvd.
Houston, Texas 77006
Telephone (713) 655-9111
Facsimile (713) 655-9112
philip@hilderlaw.com
tate@hilderlaw.com

**WOLF POPPER LLP**
Patricia I. Avery (*pro hac vice* to be filed)
Radha Nagamani Raghavan (*pro hac vice* to be filed)
845 Third Avenue
New York, NY 10022
Telephone: (212) 759-4600
Facsimile: (212) 486-2093
Email: pavery@wolfpopper.com
rraghavan@wolfpopper.com

*Attorneys for Plaintiff and the Proposed Class*

11/14/2022 7:16:49 PM
Marilyn Burgess District Clerk
Harris County
Envelope No: 70166408
By: JONES, PATRICIA D
Filed: 11/14/2022 7:16:49 PM

# Marilyn Burgess
## HARRIS COUNTY DISTRICT CLERK

201 Caroline | P.O. Box 4651 | Houston, Texas 77210-4651 | 832-927-5800 | www.hcdistrictclerk.com

### Request for Issuance of Service

CASE NUMBER: _____     CURRENT COURT: _____

**Name(s) of Documents to be served:** PLAINTIFF'S ORIGINAL PETITION & CITATION

**FILE DATE:** 11/14/2022 Month/Day/Year
**SERVICE TO BE ISSUED ON (Please List Exactly As The Name Appears In The Pleading To Be Served):**

**Issue Service to:** LABORATORY CORPORATION OF AMERICA HOLDINGS

Address of Service: 211 E. 7TH STREET, SUITE 620

City, State & Zip: AUSTIN, TX 78701-3218

Agent (if applicable): CORPORATION SERVICE COMPANY D/B/A CSC-LAWYERS INCORPORATING

SERVICE COMPANY

**TYPE OF SERVICE/PROCESS TO BE ISSUED:** (Check the proper Box)

| | | | |
|---|---|---|---|
| X **Citation** | ☐ **Citation by Posting** | ☐ **Citation by Publication** | ☐ **Citations Rule 106 Service** |
| ☐ **Citation Scire Facias** | Newspaper_____ | | |
| ☐ **Temporary Restraining Order** | ☐ **Precept** | | ☐ **Notice** |
| ☐ **Protective Order** | | | |
| ☐ **Secretary of State Citation ($12.00)** | ☐ **Capias** (not by E-Issuance) | | ☐ **Attachment** (not by E-Issuance) |
| ☐ **Certiorari** | ☐ **Highway Commission/Texas Department of Transportation ($12.00)** | | |
| ☐ **Commissioner of Insurance ($12.00)** | ☐ **Hague Convention ($16.00)** | | ☐ **Garnishment** |
| ☐ **Habeas Corpus** (not by E-Issuance) | ☐ **Injunction** | | ☐ **Sequestration** |
| ☐ **Subpoena** | | | |
| ☐ **Other (Please Describe)** _____ | | | |

**(See additional Forms for Post Judgment Service)**

**SERVICE BY** (check one):
☐ **ATTORNEY PICK-UP** (phone) _____     ☐ **E-Issuance by District Clerk**
☐ **MAIL to attorney** at: _____     **(No Service Copy Fees Charged)**
☐ **CONSTABLE**                    *Note*: The email registered with EfileTexas.gov must be
X **CERTIFIED MAIL by District Clerk**      used to retrieve the E-Issuance Service Documents.
                                Visit www.hcdistrictclerk.com for more instructions.

☐ **CIVIL PROCESS SERVER -** Authorized Person to Pick-up: _____     Phone: _____

☐ **OTHER,** *explain* _____

**Issuance of Service Requested By:** Attorney/Party Name: Philip H. Hilder Bar # 09620050

Mailing Address: 819 Lovett Blvd., Houston, Texas, 77006, philip@hilderlaw.com

Phone Number: (713) 655-9111

P.2

# 7019 2970 0001 3507 2751

CAUSE NO.   202275017

RECEIPT NO.   968315                          75.00        CTM

\*\*\*\*\*\*\*\*\*\*                          TR # 74077961

PLAINTIFF: SPENCER, ARLENE                         In The   61st
         vs.                                       Judicial District Court
DEFENDANT: KELSEY-SEYBOLD MEDICAL GROUP PLLC (D/B/A KELSEY-   of Harris County, Texas
SEYBOLD CLINIC)                                    61ST DISTRICT COURT
                                                   Houston, TX

                          CITATION (CERTIFIED)

THE STATE OF TEXAS
County of Harris

TO: LABORATORY CORPORATION OF AMERICA HOLDINGS (A CORPORATION INCORPORATED
    IN DELAWARE) MAY BE SERVED THROUGH ITS REGISTERED AGENT
    CORPORATION SERVICE COMPANY D/B/A CSC-LAWYERS INCORPORATING SERVICE COMPANY

    211  E 7TH STREET SUITE 620   AUSTIN TX  78701 - 3218

    Attached is a copy of <u>PLAINTIFF'S ORIGINAL PETITION</u>

This instrument was filed on the <u>14th day of November, 2022</u>, in the above cited cause number
and court. The instrument attached describes the claim against you.

    YOU HAVE BEEN SUED, You may employ an attorney. If you or your attorney do not file a
written answer with the District Clerk who issued this citation by 10:00 a.m on the Monday
next following the expiration of 20 days after you were served this citation and petition,
a default judgment may be taken against you. In addition to filing a written answer with the
clerk, you may be required to make initial disclosures to the other parties of this suit. These
disclosures generally must be made no later than 30 days after you file your answer with the
clerk. Find out more at TexasLawHelp.org.

TO OFFICER SERVING:
     This citation was issued on 17th day of November, 2022, under my hand and
seal of said Court.



                                          MARILYN BURGESS, District Clerk
<u>Issued at request of</u>:                 Harris County, Texas
HILDER, PHILIP H.                          201 Caroline, Houston, Texas 77002
819  LOVETT BLVD                           (P.O. Box 4651, Houston, Texas 77210)
HOUSTON, TX  77006
Tel: (713) 655-9111
<u>Bar No.</u>:  9620050                       Generated By: JONES, PATRICIA DAVIS
                                          K5H//12153378

                          CLERK'S RETURN BY MAILING

Came to hand the _____ day of _____, _____, and executed by
mailing to Defendant certified mail, return receipt requested, restricted delivery, a true
copy  of  this  citation  together  with  an  attached  copy  of
 PLAINTIFF'S ORIGINAL PETITION
to the following addressee at address:

_____          ADDRESS

_____          ·Service was executed in accordance with Rule 106
                                            (2) TRCP, upon the Defendant as evidenced by the
(a)ADDRESSEE                                    return receipt incorporated herein and attached
                                                hereto at

_____          on _____  day of _____, _____
                                           by U.S. Postal delivery to _____
                                           _____

                                           This citation was not executed for the following
                                           reason: _____
                                           _____

                                           MARILYN BURGESS, District Clerk
                                           Harris County, TEXAS

                                           By _____, Deputy

DIST.CITM.P                     \*74077961\*                    RECORDER'S MEMORANDUM
                                                      This instrument is of poor quality
                                                            at the time of imaging.

# 7019 2970 0001 3507 2751

CAUSE NO.  202275017

RECEIPT NO.  968315                    75.00      CTM
\*\*\*\*\*\*\*\*\*\*                          TR # 74077961

| | |
|---|---|
| PLAINTIFF: SPENCER, ARLENE<br>        vs.<br>DEFENDANT: KELSEY-SEYBOLD MEDICAL GROUP PLLC (D/B/A KELSEY-<br>SEYBOLD CLINIC) | In The    61st<br>Judicial District Court<br>of Harris County, Texas<br>61ST DISTRICT COURT<br>Houston, TX |

CITATION (CERTIFIED)

THE STATE OF TEXAS
County of Harris

TO: LABORATORY CORPORATION OF AMERICA HOLDINGS (A CORPORATION INCORPORATED
    IN DELAWARE) MAY BE SERVED THROUGH ITS REGISTERED AGENT
    CORPORATION SERVICE COMPANY D/B/A CSC-LAWYERS INCORPORATING SERVICE COMPANY

    211  E 7TH STREET SUITE 620   AUSTIN  TX  78701 - 3218

    Attached is a copy of <u>PLAINTIFF'S ORIGINAL PETITION</u>

This instrument was filed on the <u>14th day of November, 2022</u>, in the above cited cause number
and court. The instrument attached describes the claim against you.

    YOU HAVE BEEN SUED, You may employ an attorney. If you or your attorney do not file a
written answer with the District Clerk who issued this citation by 10:00 a.m on the Monday
next following the expiration of 20 days after you were served this citation and petition,
a default judgment may be taken against you. In addition to filing a written answer with the
clerk, you may be required to make initial disclosures to the other parties of this suit. These
disclosures generally must be made no later than 30 days after you file your answer with the
clerk. Find out more at TexasLawHelp.org.

TO OFFICER SERVING:
    This citation was issued on 17th day of November, 2022, under my hand and
seal of said Court.

<u>Issued at request of</u>:
HILDER, PHILIP H.
819  LOVETT BLVD
HOUSTON, TX  77006
Tel: (713) 655-9111
<u>Bar No.</u>:  9620050



MARILYN BURGESS, District Clerk
Harris County, Texas
201 Caroline, Houston, Texas 77002
(P.O. Box 4651, Houston, Texas 77210)

Generated By: JONES, PATRICIA DAVIS
K5H//12153378

---

CLERK'S RETURN BY MAILING

Came to hand the_____ day of _____, _____, and executed by
mailing to Defendant certified mail, return receipt requested, restricted delivery, a true
copy   of   this   citation   together   with   an   attached   copy   of
 PLAINTIFF'S ORIGINAL PETITION
to the following addressee at address:

_____

_____        ADDRESS

                                        Service was executed in accordance with Rule 106
_____          (2) TRCP, upon the Defendant as evidenced by the
(a)ADDRESSEE                             return receipt incorporated herein and attached
                                         hereto at

_____
                                        on _____ day of _____, _____
                                        by U.S. Postal delivery to _____

                                        _____

                                        This citation was not executed for the following
                                        reason: _____
                                        _____

                                        MARILYN BURGESS, District Clerk
                                        Harris County, TEXAS

                                        By _____, Deputy

2022-75017



11.18.22

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging.

**Harris County Docket Sheet**

# 2022-75017

**COURT:**   061st

**FILED DATE:**   11/14/2022

**CASE TYPE:**   OTHER CIVIL



---

### SPENCER, ARLENE

Attorney: HILDER, PHILIP H.

### vs.

### KELSEY-SEYBOLD MEDICAL GROUP PLLC (D/B/A KELSEY-SEYBOLD CLINIC)

---

| Docket Sheet Entries | |
|---|---|
| Date | Comment |