United States District Court
Southern District of Texas
**ENTERED**
August 25, 2026
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| ARLENE SPENCER,<br><br>Plaintiff.<br><br>V.<br><br>KELSEY-SEYBOLD MEDICAL GROUP, PLLC, *et al.*,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. 4:22-cv-04354 |

## MEMORANDUM AND RECOMMENDATION

Pending before me in this putative fraud class action is Plaintiff Arlene Spencer's motion for class certification. *See* Dkt. 76 (sealed); Dkt. 83 (redacted). On August 20, 2026, I held a hearing on the motion. *See* Dkt. 102. Having considered the parties' briefing, oral arguments, the record, and the applicable law, I recommend the motion be denied.

## BACKGROUND

On November 14, 2022, Spencer filed a putative class action in Harris County District Court against Defendants Kelsey-Seybold Medical Group, PLLC d/b/a Kelsey-Seybold Clinic ("Kelsey-Seybold" or "KSC") and Laboratory Corporation of America Holdings ("LabCorp"). Since 2008, KSC has been purchasing laboratory services from LabCorp, pursuant to a Laboratory Services Agreement ("LSA"). Spencer argues that she "is the victim of a 'pass-through' billing scheme" under which KSC "refers patients to on-site laboratories [known as patient service centers or 'PSCs'] run by LabCorp for laboratory tests and then bills patients' insurance companies and/or the patients as if Kelsey-Seybold performed the tests." Dkt. 101 at 2. According to Spencer, KSC "in turn reimburses LabCorp for the service at a substantially lower price than what it receives from insurance companies/patients, but higher than what LabCorp would have received from payers had LabCorp billed the patients (or their insurers) directly." *Id.*

Spencer contends that "[t]his manner of circular billing results in substantially higher costs to patients than if LabCorp had billed directly, allowing Kelsey-Seybold and LabCorp to unfairly profit at the expense of patients." *Id.* Spencer asserted claims for fraud by nondisclosure and violations of the Texas Deceptive Trade Practices Act ("DTPA") against both defendants. Spencer also asserted a claim for unconscionability against KSC.

On December 15, 2022, LabCorp removed the case to federal district court based on jurisdiction under the Class Action Fairness Act. On February 6, 2023, Spencer filed an amended complaint asserting the same allegations and the same claims against Defendants. *See* Dkt. 21 (sealed); Dkt. 101 (redacted).

On March 31, 2023, Defendants filed motions to dismiss. On December 21, 2023, Judge George C. Hanks, Jr. denied those motions "without prejudice to being reasserted as motions for summary judgment and/or arguments opposing class certification." Dkt. 44.

On February 13, 2026, the court dismissed LabCorp from this case, pursuant to a stipulation between Spencer and LabCorp. *See* Dkts. 73, 74.

On March 31, 2026, Spencer filed her motion for class certification. *See* Dkt. 76 (sealed); Dkt. 83 (redacted). Spencer seeks:

> (i) certification of a class of all fee-for-service patients who were billed by Kelsey-Seybold Medical Group PLLC d/b/a Kelsey-Seybold Clinic ("KSC" or "Defendant") for reference clinical laboratory services and/or pathology laboratory services, performed by Laboratory Corporation of America Holdings ("Labcorp") where Blue Cross and Blue Shield of Texas, Cigna Healthcare of Texas, Inc., or UnitedHealthcare Insurance Company, either provided insurance coverage or third-party administrative services, between November 15, 2018 through May 3, 2021 . . . ; (ii) the appointment of Arlene Spencer as "Class Representative"; and (iii) the appointment of Wolf Popper LLP ("Wolf Popper") and Hilder & Associates ("Hilder") as "Class Counsel" and "Liaison Counsel," respectively.

Dkt. 83 at 14. KSC opposes class certification. *See* Dkt. 85 (sealed); Dkt. 98 (redacted).

## LEGAL STANDARD

Rule 23 governs whether a proposed class should be certified. "[T]he Rule 23 class-action device was designed to allow an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979). "To come within the exception, a party seeking to maintain a class action must affirmatively demonstrate [its] compliance with Rule 23." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (quotation omitted). Rule 23(a) requires that any purported class meet four "prerequisites":

> (1) numerosity (a class so large that joinder of all members is impracticable); (2) commonality (questions of law or fact common to the class); (3) typicality (named parties' claims or defenses are typical of the class); and (4) adequacy of representation (representatives will fairly and adequately protect the interests of the class).

*Madison v. Chalmette Refin. L.L.C.*, 637 F.3d 551, 554 (5th Cir. 2011) (cleaned up). These prerequisites—numerosity, commonality, typicality, and adequacy—are necessary but not sufficient conditions for class certification.

Rule 23(b) specifies three class types and sets out requirements—beyond those articulated in Rule 23(a)—for each. The putative class here seeks certification under Rule 23(b)(3), which permits class certification where "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

In considering a motion for class certification, I "must rigorously consider both Rule 23(a)'s prerequisites and the Rule 23(b) class type." *Chavez v. Plan Benefit Servs., Inc.*, 957 F.3d 542, 546 (5th Cir. 2020). This rigorous analysis requires me "to go beyond the pleadings to determine whether the requirements of Rule 23 have been met: a court must understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues." *Cole v. Gen. Motors Corp.*, 484 F.3d 717, 724 (5th Cir.

2007) (quotation omitted). "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013). My "obligation . . . to conduct a rigorous analysis of Rule 23's requirements . . . is not dispensed with by the parties' stipulation to certification or failure to contest one or more of Rule 23's requirements." *Ward v. Hellerstedt*, 753 F. App'x 236, 244 (5th Cir. 2018). "[T]he court [is] bound to conduct its *own* thorough . . . inquiry." *Stirman v. Exxon Corp.*, 280 F.3d 554, 563 n.7 (5th Cir. 2002).

As part of this "rigorous analysis," I must ask whether the proposed class's damages model "measure[s] only those damages attributable to [its] theory [of liability]." *Comcast*, 569 U.S. at 35. "Calculations need not be exact, but at the class-certification stage (as at trial), any model supporting a plaintiff's damages case must be consistent with its liability case, particularly with respect to the alleged effect of the violation." *Ludlow v. BP, P.L.C.*, 800 F.3d 674, 683 (5th Cir. 2015) (cleaned up) (applying *Comcast*'s rationale to a putative securities class action); *see also Slade v. Progressive Sec. Ins. Co.*, 856 F.3d 408, 410–11 (5th Cir. 2017) ("*Comcast* held that when plaintiffs argue that damages can be decided on a class-wide basis, plaintiffs must put forward a damages methodology that maps onto plaintiffs' liability theory. Our cases interpreting *Comcast* confirm that what *Comcast* demands is fit between plaintiffs' class-wide liability theory and plaintiffs' class-wide damages theory." (cleaned up)). "Such an analysis will frequently entail overlap with the merits of the plaintiff's underlying claim. That is so because the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Comcast*, 569 U.S. at 33–34 (quotations omitted).

Finally, I must also "consider how a trial on the merits would be conducted if the class were certified." *Prantil v. Arkema Inc.*, 986 F.3d 570, 574 (5th Cir. 2021) (quotation omitted).

## ANALYSIS

KSC contests several requirements for class certification. Because Spencer cannot satisfy Rule 23(b)(3)'s predominance requirement for any of her asserted causes of action, I focus on whether each theory is susceptible to proof through common evidence. I need not separately resolve every remaining certification requirement.

### A. UNCONSCIONABILITY

Spencer's first cause of action is unconscionability. But unconscionability is an affirmative defense, not a standalone claim. Spencer understands this, which is why she argues that "KSC would only be entitled to payments (and thus not unjustly enriched) if it could enforce what [Spencer] believes is an unconscionable contract against the Class." Dkt. 92 at 12. But KSC is not the plaintiff here—Spencer is. To the extent that KSC would argue the affirmative defense of contractual waiver, Spencer is free to counter with an argument of unconscionability. But none of that makes unconscionability a standalone claim subject to class treatment.

Spencer contends that KSC "already unsuccessfully moved to dismiss Count One and Judge Hanks deferred the arguments to summary judgment. ECF 44. KSC is free to argue that the contract is enforceable as applied to the whole Class *on summary judgment*." Dkt. 92 at 13 (emphasis added). Spencer misquotes Judge Hanks's ruling. Judge Hanks denied the motions to dismiss "without prejudice to being reasserted as motions for summary judgment and/*or arguments opposing class certification*." Dkt. 44 at 1 (emphasis added). Now is as good a time as any to put this straightforward issue to bed: Spencer is free to argue unconscionability when defending the merits of her fraud by nondisclosure and DTPA claims, but "[u]nconscionability is not an affirmative claim on which [Spencer] could prevail and make a recovery against [KSC]." *Kennedy v. Harber*, No. 05-17-01217-CV, 2018 WL 3738091, at *4 (Tex. App.—Dallas Aug. 7, 2018, no pet.)

Class certification cannot be based on a nonexistent cause of action. *See, e.g.*, *Am. Campus Cmtys., Inc. v. Berry*, 667 S.W.3d 277, 288 (Tex. 2023) ("It borders

on the farcical to ask whether class-wide questions will predominate over individual questions in the litigation of claims that do not exist. When the proposed class claims have no basis in law, as is the case here, class certification must be denied."). Thus, to the extent that Spencer would base this class action on her claim of unconscionability, class certification should be denied.

## B. Fraud by Nondisclosure

To establish fraud by nondisclosure, Spencer must prove: (1) KSC "failed to disclose facts"; (2) KSC "had a duty to disclose those facts"; (3) "the facts were material"; (4) KSC knew that she "was ignorant of the facts" and "did not have an equal opportunity to discover the facts"; (5) KSC "was deliberately silent when it had a duty to speak"; (6) by failing to disclose the facts, KSC "intended to induce" her "to take some action or refrain from acting"; (7) she relied on KSC's nondisclosure; and (8) she "was injured as a result of acting without that knowledge." *Blankinship v. Brown*, 399 S.W.3d 303, 308 (Tex. App.—Dallas 2013, pet. denied). Even if I assume that Spencer can prove each of these elements for herself, proving materiality, damages, or reliance for every other class member would require individualized inquiries, which defeats the purpose of a class action.

KSC argues: "The Fifth Circuit made clear that the [class-wide] presumption of reliance is limited to only failure to disclose claims brought under the Securities Exchange Act." Dkt. 98 at 27 (citing *Ibe v. Jones,* 836 F.3d 516, 532 (5th Cir. 2016)). Indeed, the *Ibe* court affirmed a district court's refusal to certify a class because "individual issues of materiality, damages, and reliance" would predominate the class's fraudulent inducement claim. 836 F.3d at 532. Spencer attempts to distinguish *Ibe* by arguing that "*Ibe* discusses the *Affiliated Ute* presumption, which is a different standard that considers reasonableness and materiality from the perspective of an investor." Dkt. 92 at 20 n.10. True as that may be, it has nothing to do with the Fifth Circuit's affirming a district court's refusal to certify a class where individual issues of materiality, damages, and reliance predominate.

The materiality element is particularly problematic in this case. For Spencer personally, it is easy to see how KSC's nondisclosure might have been material. Under Spencer's health insurance plan, she would have incurred no out-of-pocket expense had LabCorp billed her insurer instead of KSC. *See* Dkt. 98-2 at 15 ("If LabCorp . . . performs your covered lab services, you will have no out-of-pocket expense and you will not have to file a claim."). The same cannot be said of every other class member for whom materiality will pose a separate, individualized inquiry. Spencer argues for a presumption of class-wide reliance because "KSC never disclosed the existence of its pass-through billing scheme to its patients or the public." Dkt. 92 at 20. True as that may be, it does not change the fact that some class members may nevertheless have been aware of KSC's billing practices from personal experience. Were this an *affirmative* misrepresentation case, I could perhaps see a way to class certification. But the issue here is nondisclosure, which indeed makes each class member's knowledge relevant to materiality and each class member's individual circumstance relevant to reliance. Accordingly, I cannot recommend certification of Spencer's fraud by nondisclosure claim.

The Fifth Circuit held as much in *McManus v. Fleetwood Enterprises*, in which it observed that the Texas Supreme Court has rejected a class-wide presumption of reliance. *See* 320 F.3d 545, 549 (5th Cir. 2003). Spencer attempts to distinguish *McManus*, arguing that:

> [I]n *McManus v. Fleetwood Enters.,* 320 F.3d 545 (5th Cir. 2003), both plaintiffs alleged that the representation that the defendants' motor home could safely ***tow*** 3,500 pounds amounted to a representation that it could safely ***brake*** while towing 3,500 pounds. The court noted that potential class members, like the two representative plaintiffs there, "may have read the wardrobe door tag as Fleetwood reads it—as being silent on the issue of supplemental brakes—and certainly some class members may have actually ***known*** at the time of purchase that supplemental brakes would be needed." *Id.* at 550. Such "potential variables" are not at issue in the instant Action.

Dkt. 92 at 19–20. But such variables *are* at issue in this action.

Spencer's own evidence demonstrates why knowledge cannot be inferred uniformly.[1] Spencer received an invoice from KSC disclosing "that LABORATORY SERVICES THAT ARE INDICATED WITH A /90 MODIFIER ARE PURCHASED FROM LABCORP OF AMERICA." Dkt. 83 at 24–25 (quotation omitted). In the same way that Spencer discovered KSC's pass-through billing scheme—by looking at her bill—other class members could have similarly realized KSC's actions before the class period began. Other class members also may not have been in Spencer's situation of incurring no cost if LabCorp had billed their insurer directly. Thus, such class members may not have found KSC's omission material. Individualized inquiries would be the only way to discover such information.

I am aware of no post-2000 case in which a Texas state or federal court has certified a class for a fraud by omission claim.[2] Thus, I decline to recommend certification of a class for Spencer's fraud by nondisclosure claim.

### C. DTPA VIOLATIONS

Spencer asserts four separate theories for why KSC has violated the DTPA, codified in Chapter 17 of the Texas Business and Commerce Code:

> [1] under § 17.46(b)(2) ("causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods and services");
>
> [2] under § 17.46(b)(3) ("causing confusion or misunderstanding as to affiliation, connection, or association with, or certification by, another");

---

[1] I do not reach KSC's objections to Spencer's evidence because sustaining KSC's objections "would not change the result." *Daigle v. AmeriHome Mortg. Co.*, No. 3:22-cv-00133, 2023 WL 8373179, at *2 (S.D. Tex. Dec. 4, 2023) (quotation omitted).

[2] There are pre-2000 cases in which Texas courts permitted a class-wide presumption of reliance. *See McManus*, 320 F.3d at 549 (collecting cases). This includes cases like *In re Great Southern Life Insurance Co. Sales Practices Litigation*, 192 F.R.D. 212 (N.D. Tex. 2000), which Spencer's counsel cites in their briefing and urged me to consider at the hearing. Those cases were "overruled" when the Texas Supreme Court "'reject[ed] this approach of certify now and worry later.'" *McManus*, 320 F.3d at 549 (quoting *Sw. Refin. Co. v. Bernal*, 22 S.W.3d 425, 435 (Tex. 2000)). Accordingly, I do not consider authorities like *Great Southern*—which was decided two months *before* the Texas Supreme Court issued its decision in *Southwest Refining*—to be persuasive.

> [3] "false, misleading, deceptive" acts or practices under § 17.46(b)(24) ("failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction which the consumer would not have entered had the information been disclosed"); and
>
> [4] "unconscionable actions or course of action" under § 17.45(5) ("an act or practice, which to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree") in violation of the foregoing and §§ 17.50(a)(1), (3).

Dkt. 21 at 30–31 (sealed). The first three of these theories—stemming from the "'laundry list' items enumerated in [§] 17.46(b)"—are made actionable under § 17.50(a)(1). *Lonis v. Walton*, No. 10-22-00352-CV, 2023 WL 6157344, at *4 (Tex. App.—Waco Sept. 21, 2023, no pet.). The latter theory is made actionable under § 17.50(a)(3). I will address subsections (a)(1) and (a)(3) in turn.

***1. § 17.50(a)(1)***

To establish a DTPA claim under § 17.50(a)(1), Spencer must show that: (1) the class members "were consumers"; (2) KSC "engaged in at least one of the laundry list items"; (3) the class members "detrimentally relied on the false, misleading, or deceptive act or practice"; and (4) "the false, misleading, or deceptive act or practice was a producing cause of their injury." *B & W Supply, Inc. v. Beckman*, 305 S.W.3d 10, 21 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (citing *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 649 (Tex. 1996)). Here, as with the fraud-by-nondisclosure claims, proof of detrimental reliance would require individualized inquiries, which is unsuitable for a class action.

Spencer points to *Southwestern Bell Telephone Co. v. Marketing on Hold Inc.*, 308 S.W.3d 909 (Tex. 2010), to support the notion that class-wide reliance can be presumed here. But *Southwestern Bell* was an affirmative misrepresentation case, not an omission case. In *Southwestern Bell*, the affirmative misrepresentation was "a line item for municipal fees" from which Southwestern Bell was exempt. *Id.* at 922. The Texas Supreme Court held that

class-wide reliance could be presumed because "the customers had already used the services and were required to pay the amount due on the bill . . . to continue telephone service." *Id.* at 923. Thus, even if a customer somehow knew that the fees were wrong because Southwestern Bell was exempt, the customer had no choice but to rely on Southwestern Bell's affirmative misrepresentation to continue telephone service. That is not the case here. Here, once a patient knows about KSC's pass-through billing scheme, she can no longer claim to have relied on KSC's failure to disclose, and she cannot claim damages for visits that postdate her knowledge.

For example, Spencer knew about KSC's pass-through billing scheme when, "a few weeks following her January 2021 visit to the PSC at KSC's WGP Location," she received an invoice from KSC disclosing "that LABORATORY SERVICES THAT ARE INDICATED WITH A /90 MODIFIER ARE PURCHASED FROM LABCORP OF AMERICA." Dkt. 83 at 24–25 (quotation omitted). Once Spencer received that invoice, she could no longer claim not to know about the pass-through billing scheme. Importantly, Spencer's January 2021 visit was her *first* visit to a KSC location since KSC agreed to purchase LabCorp's services in 2008. *See* Dkt. 98-1 at 99.[3] It is doubtful that the same can be said of all other class members. At minimum, a prior invoice containing that disclosure prevents me from inferring class-wide ignorance of the pass-through billing scheme. Determining whether a repeat patient had previously received and understood such a disclosure would itself require individualized inquiry.

Theoretically, I could limit the class to "all fee-for-service patients who were billed *for the first time* by KSC for reference clinical laboratory services and/or pathology laboratory services, performed by LabCorp," but that would solve only one problem. There remains the problem that, contrary to Spencer's contention,

[3] Spencer testified that she had been a KSC patient around 1985, but she had not been a KSC patient again before January 2021. *See* Dkt. 98-1 at 99. Thus, any KSC visit prior to Spencer's January 2021 visit predated the 2008 LSA.

class-wide reliance cannot "be made based on the nature and extent of KSC's failure to disclose." Dkt. 92 at 18. According to Spencer:

> KSC provided on-site PSCs where Labcorp performed all Lab Services, ensuring that it would not be necessary to leave a KSC location to get laboratory services. KSC intentionally presented Labcorp as the provider of Lab Services. Each Class member proceeded to have their Lab Services performed by Labcorp . . . as they would if Labcorp performed such services in the ordinary course of business. Each Class member was then successfully pass-through billed by KSC for Labcorp's services. *This evidences their reliance on KSC's non-disclosure of its pass-through billing scheme.*

*Id.* at 18–19 (emphasis added) (cleaned up). In other words, Spencer's argument is that because KSC failed to disclose pass-through billing, every class member necessarily relied on that omission. But if simply proving an omission constituted proof of reliance, then there would be no point in having reliance as a separate element from the misrepresentation. Because Spencer has not shown a reasonable inference of class-wide reliance, I cannot recommend certifying a class for Spencer's § 17.50(a)(1) claim.

***2. § 17.50(a)(3)***

Spencer's § 17.50(a)(3) claim fares no better. To establish a DTPA claim under § 17.50(a)(3), Spencer must show that KSC: (1) took advantage of her lack of knowledge, ability, experience or capacity; (2) KSC's actions were "grossly unfair"; and (3) KSC's action was "the producing cause of damages." *Bradford v. Vento*, 48 S.W.3d 749, 760 (Tex. 2001). "Because the unconscionable-act-or-course-of-action element of a [DTPA §] 17.50 unconscionability claim requires proof of each consumer's knowledge, ability, experience, or capacity, courts generally refuse to certify [DTPA] unconscionability claims for class treatment." *Gordon v. Sig Sauer, Inc.*, No. 4:19-cv-585, 2020 WL 4783186, at *13 (S.D. Tex. Apr. 20, 2020) (quotation omitted) (collecting cases). This appears to be a uniform holding. *Brashear v. Panini Am., Inc.*, No. 05-22-01338-CV, 2023 WL 4540270, at *11 (Tex. App.—Dallas July 14, 2023, no pet.) ("We are not aware of a single case in Texas in which a class was certified to resolve a DTPA unconscionability claim."). Spencer

does not meaningfully respond to courts' unwillingness to certify a class on a DTPA unconscionability claim. Instead, she cites cases having nothing to do with class certification for the general proposition that KSC's conduct was unconscionable. *See* Dkt. 92 at 23. Maybe so, but that inquiry must be made on an individual basis. I will not be the first judge to recommend certification of such a class.

### D. DAMAGES

Spencer's proposed damages model independently fails the fit required by *Comcast*. Spencer proposes to calculate recovery by subtracting what KSC paid LabCorp from all amounts KSC received from patients and insurers for the laboratory services. *See* Dkt. 92 at 25. That formula measures KSC's alleged margin, not the economic loss suffered by each patient. It includes payments made by insurers who are not members of the proposed class, can yield recovery exceeding a patient's own out-of-pocket loss, and does not determine what the patient would have paid had LabCorp billed directly. Because the methodology does not isolate damages attributable to Spencer's asserted fraud or DTPA violations, it does not map onto her liability theories. This is an independent reason not to certify this class.

## CONCLUSION

For the reasons discussed above, I recommend that Spencer's motion for class certification be denied. *See* Dkt. 76 (sealed); Dkt. 83 (redacted). The parties' dispositive motions are due by February 16, 2027.

The parties have 14 days from service of this Memorandum and Recommendation to file written objections. *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(2). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.

SIGNED this 25th of August 2026.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE